UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GARY REYNOLDS,                              )
                                            )
                          Plaintiff,        )
              v.                            )
                                            )        Civil Action No. 07-0499 (RCL)
MICHAEL MUKASEY                             )
U.S. Attorney General                       )
                                            )
                          Defendant.        )
_____)

## MOTION TO DISMISS OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Rules 12(b)(3), 12(b)(6) and 56 of the Federal Rules of Civil Procedure, Defendant, through counsel, respectfully moves this Court to dismiss Plaintiff's complaint with prejudice or grant summary judgment in favor of the Defendant for lack of subject matter jurisdiction and failure to state a claim.  In support of this motion, Defendant respectfully refers the Court to the attached memorandum of points and authorities.

Because this is a dispositive motion, the undersigned has not sought Plaintiff's consent before filing it.  LCvR 7 (m).

February 12, 2008                              Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____/s/_____
Raymond A. Martinez
Special Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7153

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GARY REYNOLDS,                                    )
                                                 )
                            Plaintiff,           )
            v.                                   )
                                                 )       Civil Action No. 07-0499 (RCL)
MICHAEL MUKASEY,                                 )
U.S. Attorney General                            )
                                                 )
                            Defendant.           )
_____)

## DEFENDANT'S STATEMENT OF
## MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE

Pursuant to Local Rule 7.1(h), Alberto Gonzales, U.S. Attorney General, respectfully

submits this statement of material facts as to which he contends there is no genuine dispute.  The

statements below are established by the record of investigation ("ROI") in this case.

1.      Plaintiff is an African American male who is employed as a Medical Officer at the

        Federal Detention Center Philadelphia in Philadelphia, Pennsylvania and began his

        employment  on or about October 25, 1998.  See Compl. ¶¶ 4, 7; ROI, P-2005-0138, Ex.

        5, p. 12.

2.      A Medical Officer  "provides medical care to inpatients in institutions with an inpatient

        mission."  Exhibit 2, ROI, P-2005-0138, Ex. 17, p. 107.

4.      On or about July 11, 2002, a female inmate alleged that the Plaintiff acted inappropriately

        during a medical examination.  The allegation was inmate physical abuse.  The inmate

        complained that Plaintiff used unnecessary force and disregarded the inmate's level of

        pain during a pelvic examination.  An investigation was conducted and found that the

        allegation could not be sustained but concluded that Plaintiff used "poor professional

        judgment."  Exhibit 3, ROI, P-2005-0138, Ex. 7, p. 42.

5.      On or about May 2004, a female inmate alleged that the Plaintiff acted inappropriately during a medical examination.  The allegation was abusive sexual contact.  An investigation was conducted and found that the allegation could not be sustained.  The investigation concluded that although Plaintiff failed to treat the inmate for the knee problem of which she had complained, this was not professional misconduct.  Exhibit 4, *ROI, P-2005-0138, Ex. 7, p. 43.*

6.      On or about September 2004, a female inmate alleged that the Plaintiff acted inappropriately during a medical examination.  The female inmate complained of inappropriate touching during a medical exam.  An investigation was conducted and the investigation found that the allegation could not be sustained.  Compl. ¶ 11.

7.      On or about November 2004, a female inmate alleged that the Plaintiff acted inappropriately during a medical examination.  The female inmate complained of inappropriate touching during a medical exam.  An investigation was conducted and the investigation found that the allegation could not be sustained.  Compl. ¶ 11.

8.      On October 15, 2004, Plaintiff was required to have a female staff member present when he examined female inmates.  Compl. ¶ 13.  The requirement to have a female employee present when Plaintiff treated a female inmate ended on March 9, 2005 when the investigations into the allegations against the Plaintiff were concluded.  Exhibit 5, *ROI, P-2005-0138, Ex. 12, p. 84.*

9.      On or about March 15, 2005, the Plaintiff filed an EEO complaint.  Exhibit 6, Compl. ¶ 24.

10.     Between June 26, 2006 - August 28, 2006, the Defendant denied Plaintiff some of his requested leave and classified him as AWOL.  Compl. ¶¶ 27-31.

2

11.    On or about September 6, 2006, the Plaintiff filed a second EEO complaint. Exhibit 7,

Compl. ¶ 35.

12.    On or about January 15, 2008, the Plaintiff filed an amended complaint alleging an

additional retaliation claim when on or about April 30, 2007 he was informed that  his medical

privileges would be placed in abeyance while an investigation into the care of one of his patients

was conducted. ¶ 40.


February 12, 2008                              Respectfully submitted,




_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_____/s/_____
Raymond A. Martinez Texas Bar  # 13144015
Special Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7153

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GARY REYNOLDS,                          )
                                        )
                    Plaintiff,          )
            v.                          )
                                        )       Civil Action No. 07-0499 (RCL)
MICHAEL MUKASEY,                        )
U.S. Attorney General                   )
                                        )
                    Defendant.          )
_____ )

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Michael Mukasey Attorney General ("Defendant"), respectfully submits this memorandum of points and authorities in support of his motion to dismiss or in the alternative, for summary judgment.  Plaintiff brings suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended, and alleges racial discrimination.

### INTRODUCTION

Plaintiff originally filed his complaint on March 15, 2007 and then filed an amended complaint on January 15, 2008.  Defendant originally filed its Motion to Dismiss or in the Alternative, for Summary Judgement on October 1, 2007 and subsequently withdrew, without prejudice its Motion so as to review the amended complaint.  Defendant herein, re-files the instant Motion.  Plaintiff is an African American man who is employed as a medical doctor for the Federal Detention Center Philadelphia, in Philadelphia, Pennsylvania.  Even though several female inmates over a period of time claimed that the Plaintiff acted inappropriately during their medical examinations, in his initial complaint,  the Plaintiff claims that the Defendant racially discriminated against him by investigating these claims and by requiring that the Plaintiff use female chaperones whenever he examined female inmates during the period of time that he was

under investigation.  See Compl. ¶¶ 7-13.  The Plaintiff also claims that the Defendant retaliated against him for filing an EEO claim by denying him requested leave.  Compl. ¶ 26-30.  In his amended complaint filed January 15, 2008, Defendant repeats his claims and adds a new claim alleging that the defendant retaliated against him by placing his medical privileges in abeyance[1]. Amended Compl.¶  40.

ARGUMENT

I.      Venue is Improper in the District of Columbia.

Plaintiff's complaint is brought under Title VII and alleges racial employment discrimination.  The statutory scheme in Title VII has a special venue provision which specifies four bases for venue:

> Such an action may be brought in any judicial district in the State **[1]** in which the unlawful employment practice is alleged to have been committed, **[2]** in the judicial district in which the employment records relevant to such action are maintained and administered, or **[3]** in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but **[4]** if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3) (numbering added).  Thus, the statute defines four primary possible venues for a Title VII case.

Here, venue under Title VII is not proper in the District of Columbia.  First, the allegedly unlawful employment practices occurred in Philadelphia, Pennsylvania where the Plaintiff works as a Medical Officer at the Federal Detention Center Philadelphia.  Second, the Central Office in Washington, D.C. does not keep the Plaintiff's records.  BOP's consolidated employee services center in Grand Prairie, Texas, maintains the official copies of all relevant employment records

---

[1]Except for the addition of this retaliation claim in paragraph 40 of the amended complaint, there is no difference between the original complaint filed on March 15, 2007.

and the Federal Detention Center Philadelphia additionally maintains the Plaintiff's leave records, which are at issue in this action and has access electronically to Plaintiff's personnel data. Duchaussee Declaration ¶¶ 4-6. Third, the alleged discrimination did not affect the location of Plaintiff's employment. Finally, the Defendant may be found in the Eastern District of Pennsylvania. The fourth basis for venue is applicable only in situations where the agency "may not be found within the judicial district that is the locus of the alleged discrimination." Darby v. U.S. Dept. of Energy, 231 F. Supp. 2d 274, 278 (D.D.C. 2002). Courts have specifically held that the actions and omissions of an agency's headquarters do not automatically impute venue wherever that principal office is located. See, e.g., Robinson v. Potter, No. 04-890 (RMU), 2005 WL 1151429, 2005 U.S. Dist. LEXIS 9491 (D.D.C. May 2, 2005). Therefore, Plaintiff cannot establish venue in D.C. under any of the four possible bases in Title VII's special venue provision in section 2000e-5(f)(3). Therefore, Plaintiff's Title VII claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3).[2]

## II.    Legal Standard for Deciding Rule 12(b)(6) Motions

In resolving a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court will treat the complaint's factual allegations as true and draw all reasonable inferences therefrom in the plaintiff's favor. Sullivan-Obst v. Powell, Secretary, Department of State, 300 F. Supp. 2d 85, 91 (D.D.C. 2004). Therefore, the complaint will be dismissed if the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Id. Finally, while "many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations." Id.

---

[2]    In the alternative, Plaintiff's complaint could be transferred to the Eastern District of Pennsylvania.

3

**III.     Legal Standard for Deciding Rule 56 Motions**

In the alternative, summary judgment pursuant to Fed. R. Civ. P. 56 is proper when the

pleadings, depositions, answers to interrogatories, and admissions together with affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In ruling on a motion for

summary judgment, the court must consider whether the nonmoving party failed to make a

showing sufficient to establish the existence of an element essential to that party's case and on

which that party will bear the burden of proof at trial.  Sullivan-Obst, 300 F. Supp. 2d at 90.  The

nonmoving party must present specific facts that would enable a reasonable jury to find in its

favor; thus, by pointing to an absence of evidence proffered by the nonmoving party, a moving

party may succeed on summary judgment.  Id.  Also, while the court must accept the nonmoving

party's evidence as true, if the evidence is "merely colorable, or is not significantly probative,"

summary judgment may be granted.  Id.

**IV.     Legal Analysis for Discrimination and Retaliation**

    A.    Allocation of burdens of production and persuasion

Title VII of the Civil Rights Act, as amended, provides that all "personnel actions

affecting employees or applicants for employment" in Executive agencies "shall be made free

from any discrimination based on race." 42 U.S.C. § 2000e-16(a).  Where, as here, a plaintiff

offers no direct evidence of discrimination, employment discrimination claims are governed by

the familiar framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-805 (1973)"

Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  The McDonnell Douglas scheme is

applicable to the evaluation of circumstantial evidence in both a "single-motive" and  "mixed-

motive" case.  See Fogg v. Gonzales, 492 F.3d 447, 451 and fn* (D.C. Cir. 2007).  "The familiar

4

McDonnell Douglas framework governs its application for discrimination and retaliation claims." Vickers v. Powell, 493 F.3d 186, 194 (D.C. Cir. 2007); see, e.g., Chappell-Johnson v. Powell, 440 F.3d 484 (D.C. Cir. 2006); McKenna v. Weinberger, 729 F.2d 783, 790 (D.C. Cir. 1984).

Under this test, the plaintiff has the initial burden of proving by a preponderance of the evidence a "*prima facie*" case of discrimination or retaliation. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If the plaintiff is able to establish a *prima facie* case, the burden of production shifts to the defendant to produce credible evidence that its actions were taken for a legitimate, nondiscriminatory reason. Id. Once it is established that both parties have met their burden of production, the burden shifting scheme becomes irrelevant and plaintiff must establish, by a preponderance of the evidence, that discrimination was a motivating factor for any employment practice. See Desert Place, Inc. v .Costa, 539 U.S. 90, 101 (2003). Of course, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000).

**V.    No Discrimination**

A.    No prima facie case of race discrimination

To establish a *prima facie* case of race discrimination under Title VII, a plaintiff must show that:  "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." George v. Leavitt, 407 F.3d 405, 413 (D.C. Cir. 2005), *quoting* Stella v. Mineta, 284 F.3d 135, 144-45 (D.C. Cir. 2002).

1)    No adverse employment action

Plaintiff cannot establish the second of these *prima facie* elements (adverse action) in regards to his allegations of discrimination.  An adverse action is "a significant change in employment status, such as hiring, firing, failing to promote, or a reassignment with significantly different responsibilities." Brown, 199 F.3d 446, 452 (D.C. Cir. 1999).  Absent a reduction in pay or benefits, only those actions creating "materially adverse consequences affecting the terms, conditions, or privileges of [his] employment or [his] future employment opportunities" amount to adverse actions. Brown, 199 F.3d at 457.  Here, the Plaintiff alleges that after several female inmates claimed that the Plaintiff acted inappropriately during his medical examinations of the inmates, Defendant racially discriminated against him by investigating the claims and requiring that the Plaintiff use female chaperones whenever he examined female inmates during the period of time that he was under investigation.  See Compl. ¶¶ 7-13; Exhibit 5, *ROI, P-2005-0138, Ex. 12, p. 84.*

a)    Investigation of allegations of inappropriate conduct is not adverse action

Plaintiff did not experience an adverse action when the Defendant investigated the complaints of several female inmates against him.[3]  During the investigation, the Plaintiff did not face a reduction in pay or benefits or any other materially adverse change in the terms and conditions of his employment. Brown, 199 F.3d at 457.  An "investigation allegation, alone, is not an adverse action." Runckle v. Gonzales, 391 F. Supp. 2d 210, 227 (D.D.C. 2005).  Here, the investigations were ultimately dismissed and no discipline was imposed upon the Plaintiff, as the investigations concluded that the complaints of misconduct could not be sustained. See Ware v. Billington, 344 F. Supp.2d 63, 71 n.1 (D.D.C 2004) (stating that "although the discipline

---

[3]    Moreover, the Defendant has a duty to investigate such allegations. See  28 C.F.R. § 0.29c; 28 C.F.R. § 0.29e (2007).

6

imposed as a result of an investigation may have a sufficiently adverse effect on plaintiff's employment to be actionable, the mere initiation of the investigation does not"). "The fact that the plaintiff was subject to an investigation does not amount to an adverse action because 'mere investigations by [an] employer ... have no adverse effect on plaintiff's employment.' If an investigation is dismissed, an employee would not have suffered any adverse effect." Runckle v. Gonzales, 391 F. Supp. 2d at 226-27 *quoting* Mack v. Strauss, 134 F. Supp.2d 103, 111 (D.D.C. 2001). Thus, the investigations into the claims against the Plaintiff do not constitute adverse actions.

        b)     The requirement of a female chaperone for medical examinations of female inmates is not an adverse action

Plaintiff did not experience an adverse employment action when he was required to have a female staff member present during his medical examinations of female inmates. "[B]eing closely supervised or 'watched' does not constitute an adverse employment action." Runckle, 391 F. Supp. 2d at 226 (finding the fact that FBI security officials, for whatever reason, may have "scrupulously monitored" the plaintiff during his training assignment at Quantico and removed him does not amount to an adverse action ); see Lester v. Natsios, 290 F. Supp.2d 11, 20 (D.D.C. 2003); Burton, 339 F. Supp.2d at 111. Being subject to "scrupulous monitoring" does not constitute an adverse action because "it is part of the employer's job to ensure that employees are safely and properly carrying out their jobs." Hussain v. Prinicipi, 344 F. Supp.2d 86, 104-105 (D.D.C. 2004). Moreover, neither the Plaintiff's pay nor benefits were effected. See Brown, 199 F.3d 457. Therefore, having a female staff member present during his medical examinations of female inmates does not constitute an adverse action.

        B.     No inference of race discrimination

Plaintiff cannot establish the third of these *prima facie* elements, that the alleged unfavorable action gives rise to an inference of discrimination.  It is clear that for the safety of female inmates, charges of misconduct during their medical examinations must be investigated. The sensible and prudent course of action was to require female chaperones while the Plaintiff was under investigation for misconduct.  In fact, other federal correctional facilities routinely required male physicians to have a female staff member present while female inmates are examined.  ROI, P-2005-0138, Ex. 12, p. 82, 86.  Moreover, the Plaintiff was only required to have a female chaperone from October 15, 2004 to March 9, 2005, the period that he was under investigation for misconduct.  ROI, P-2005-0138, Ex. 5, pp. 12, 16.  When the investigation closed, the requirement for a female chaperone ended.  ROI, P-2005-0138, Ex. 5, pp. 12, 16. Neither the investigation nor the requirement for a female chaperone raises the inference of discrimination.[4]

C.    Legitimate, nondiscriminatory reason

Even if a *prima facie* case for race discrimination or retaliation could be established, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the challenged actions.  <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981) (defendant's burden articulated for Title VII cases).  The defendant's burden is one of production, not of proof.  <u>See</u> <u>Aka v. Washington Hosp. Ctr.</u>, 156 F.3d 1284, 1288 (D.C. Cir. 1998) ("[I]n producing nondiscriminatory reasons for its challenged action, the employer is not

---

[4]    The Plaintiff argues that the Defendant did not require female chaperones for "other similarly situated Caucasian practitioners who were subject to investigations <u>that were</u> <u>found to be without merit</u>." Compl. ¶ 14 (emphasis added).  Plaintiff incorrectly suggests that the female chaperone requirement started or went beyond the period of time under which he was investigated for acting inappropriately during his medical examinations of female inmates.  ROI, P-2005-0138, Ex. 5, p. 16.

obligated to support these reasons with objective evidence sufficient to satisfy the preponderance

of the evidence standard").  Therefore, the defendant's burden is satisfied if he simply explains

what he has done or produces evidence of legitimate, nondiscriminatory reasons.  St. Mary's

Honor Center v. Hicks, 509 U.S. 502 (1993).  Moreover, the ultimate burden of persuading the

court that the defendant employer intentionally discriminated or retaliated remains with the

plaintiff employee at all times.  Hicks, 509 U.S. at 507; Aka, 156 F.3d at 1288.  Thus, once an

employer articulates a legitimate, nondiscriminatory reason for the challenged employment

decision, the employer prevails unless the employee succeeds in discrediting the employer's

explanation.  See Sami v. Billington, 195 F.3d 1, 3 (D.C. Cir. 1999).  In other words, the

defendant prevails unless plaintiff presents objective evidence that undermines the defendant's

proffered explanation for its actions or provides independent evidence of discriminatory

statements or attitudes on the part of the employer.  See Aka, 156 F.3d at 1289.  And while

"plaintiff's discrediting of an employer's stated reason for its employment decision is entitled to

considerable weight," a plaintiff who creates a genuine issue of material fact with respect to the

employer's proffered reason will not always be deemed to have presented enough evidence to

survive summary judgment.  Id. at 1290.  As the D.C. Circuit has stated, "[t]here may be no

legitimate jury question as to discrimination in a case in which a plaintiff has created only a

weak issue of material fact as to whether the employer's explanation is untrue, and there is

abundant independent evidence in the record that no discrimination has occurred."  Id. at 1291;

see also Reeves v. Sanderson, 530 U.S. 133, 148 (2000).

Finally, a plaintiff cannot create a genuine issue of material fact based merely on

personal speculation of discriminatory intent.  Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir.

1999)("a mere unsubstantiated allegation . . . creates no genuine issue of material fact and will

not withstand summary judgment.") (quoting <u>Harding v. Gray</u>, 9 F.3d 150, 154 (D.C. Cir.

1993)); <u>Phillips v. Holladay Property Services, Inc.</u>, 937 F. Supp. 32, 35, n. 2 (D.D.C. 1996),

*aff'd*, 1997 WL 411695 (D.C. Cir. 1997)("[A] plaintiff's denial of defendant's articulated reason

without producing substantiation for the denial is insufficient to withstand a motion for summary

judgment").  Measured against these standards, plaintiff is unable to present sufficient evidence

to defeat defendant's motion for summary judgment on his race discrimination claims.

The Defendant had legitimate reasons for investigating the Plaintiff and requiring a

female chaperone during the period that he was under investigation.  Several female inmates had

alleged that the Plaintiff acted inappropriately during their medical examinations.  Given the

seriousness of such charges, the Defendant had compelling reasons and a duty to conduct the

investigations.  <u>See</u>  28 C.F.R. § 0.29c; 28 C.F.R. § 0.29e (2007).  To protect the female inmates

and even to protect the Plaintiff from further charges, the Defendant reasonably required that the

female staff member be present for Plaintiff's examinations with female inmates.  *ROI, P-2005-*

*0138, Ex. 6, p. 31; ROI, P-2005-0138, Ex. 7, p. 46; ROI-P-2005-0138, Ex. 8, pp. 51-52; ROI, P-*

*2005-0138, Ex. 9, p. 58; ROI, P-2005-0138, Ex. 10, p. 64; ROI, P-2005-0138, Ex. 12, p. 86;*

*ROI, P-2005-0138, Ex. 13, p. 93.*  A female presence in the examination room would prevent the

inmates from making false allegations as well as ensure a proper medical examination.

Therefore, the Defendant properly and legitimately conducted investigations and required female

chaperones for the Plaintiff during the period that he was under investigation.

VI.    No Retaliation

A.    No prima facie case of retaliation

Under <u>Burlington Northern v. Santa Fe Ry. Co. v. White</u>, 125 S.Ct. 2405, 2410-16 (2006)

the test for whether a prima facie case of retaliation has been shown is: (1) that a plaintiff

engaged in protected conduct, such as filing EEO charges; (2) that a reasonable employee would have found the challenged retaliatory action materially adverse, "which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination;" and (3) that a causal connection existed between the adverse action and the protected activity.  Id.  Plaintiff can not establish the third of these elements (causal connection).

Causation may be established by showing that "the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity."  Mitchell v. Baldrige, 759 F.2d 80, 86 (D.C. Cir. 1985); see also Cones v. Shalala, 100 F.3d 512 (D.C. Cir. 2000) (strong timing evidence alone is sufficient to show a causal connection).

However, Plaintiff cannot establish the requisite causal connection between any protected activity and the allegedly retaliatory conduct.  Plaintiff's retaliation claims consist of Plaintiff's leave disputes.[5]  There is simply no causality between Plaintiff's EEO complaint in March 2005 and the alleged retaliatory denial of leave starting in June 2006 and ending prior to Plaintiff's second EEO complaint filed in September 2006.  This roughly 16 month lag between the 2005 EEO complaint and the alleged retaliation suggests no causality at all.  See Clark County School District v. Breeden, 532 U.S. 268, 273-74 (2001) (finding that a 20-month lag suggests no causality at all) (quoting with approval cases finding 4-month and 3-month lags insufficient to establish causality); Wilson v. SunTrust Bank, 2004 WL 2958303 at *1 (D.C. Cir. Dec. 21, 2004) (fifteen months between filing a complaint and termination is too long to raise an

---

[5]      The Complaint states that Plaintiff's "retaliation claims are based solely, and limited to, Agency EEO No. P-2006-0320.  The administrative complaint addressed only leave disputes.  See Exhibit 7.  Therefore allegations addressed in the Complaint beyond the leave dispute issue are not part of Plaintiff's retaliation claims.

inference of retaliation); <u>Johnson v. Potter</u>, No. 04-1045, 2005 WL 3273575, *4, fn 2 (D.D.C. 2005) ("Plaintiff filed his previous EEO complaint in April 2000, sixteen months prior to his rejection from the training program, and this period is simply too long to serve as evidence of causality."); <u>Buggs v. Powell</u>, 203 F. Supp.2d 135, 149 (D.D.C. 2003) (finding a seven month span between the filing of an EEOC complaint and an adverse employment action too long to serve as evidence of causality); <u>Brodetski v. Duffey</u>, 199 F.R.D. 14, 20 (D.D.C. 2001) ("courts generally have accepted time periods of a few days up to a few months and seldom have accepted time lapses outside a year in length"); <u>Devera v. Adams</u>, 874 F. Supp. 17, 21 (D.D.C. 1995) (eight months does not strongly suggest causal link).

      Additionally, in regards to the added retaliation claim of the amended complaint, ¶ 40, Plaintiff has not established the requisite causal connection between any protected activity and the allegedly retaliatory conduct. In his amended complaint, Complainant refers to a third EEO complaint, no. P-2007-0419. Amended Compl. at 7, n.1. This complaint was filed on May 21, 2007. (See exhibit 8). None of plaintiff's prior activity can support Plaintiff's retaliation claims. Plaintiff did not file his May 27, 2007 claim until after the most recent act of retaliation which he alleges to be the April 3, 2007 abeyance of his medical privileges. Therefore the May 27, 2007 complaint is irrelevant for the purposes of a retaliation claim because it is post-facto. The May 07 EEO complaint occurred after the alleged retaliation in April of 2007. There is no casual connection. Furthermore, Plaintiff cannot rely on his two earlier EEO complaints which are the March 2005 and September 2006 complaints, as being the alleged reprisal for the April 3, 2007 decision to hold his medical privileges in abeyance. As to the March 2005 complaint, the alleged reprisal would have occurred more than two years after this complaint and nearly seven months from his September 2006 EEO complaint. Such time frames under applicable case

law are not sufficient to establish a causal connection.  Thus, Plaintiff cannot make out a *prima facie* case of retaliation.[6]

VII.    The Court should dismiss claims that were unexhausted

A.    Administrative remedy exhaustion requirement

Federal employees may file a civil action only after exhausting their administrative remedies before the concerned Federal agency.  42 U.S.C. § 2000e-16(c).  Under rule-making authority delegated by Title VII, see 42 U.S.C. § 2000e-16(b), the EEOC has "established detailed procedures for the administrative resolution of discrimination complaints, including a series of time limits for seeking informal adjustment of complaints, filing formal charges, and appealing agency decisions to the Commission."  Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997); 29 C.F.R. Part 1614 (Federal Sector Equal Employment Opportunity). Compliance with these procedures and time lines is mandatory.  "Complainants must timely exhaust these administrative remedies before bringing their claims to court."  Bowden, 106 F.3d at 437; Williams v. Munoz, 106 F. Supp. 2d 40, 42 (D.D.C. 2000) ("timely administrative charge is a prerequisite to initiation of a Title VII action").  As the U.S. Supreme Court stated in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), "'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" 536 U.S. at 108 (*quoting* Mohasco Corp. v. Silver, 447 U.S. 807, 825, 100 S. Ct. 2486, 2497 (1980)).

---

[6]    To the extent that Plaintiff suggests that the Defendant retaliated against him by conducting a medical review of inmates in his care and informing him that he would have to operate under a daily plan, such actions have been found not to be adverse.  Compl. ¶¶ 33-39. See Runckle, 391 F. Supp. 2d at 226 (finding that being "scrupulously monitored" does not amount to an adverse action); Romero-Ostolaza v. Ridge, 370 F. Supp.2d 139, 150-151 (D.D.C. 2005) (holding that the plaintiff failed to state a claim when he was placed on an "employee proficiency plan" ).

B.      Plaintiff failed to exhaust certain claims

Although the Complaint states that Plaintiff's "retaliation claims are based solely, and limited to, Agency EEO No. P-2006-0320," the Complaint discusses retaliatory allegations beyond those addressed in the administrative complaint EEO No. P-2006-0320. Compl. ¶¶ 26-45. This administrative complaint addressed only leave disputes. See Exhibit 7. In Plaintiff's district court complaint, Plaintiff's allegations of retaliation involving a non-selection, restriction of internet access, focus review of inmates in Plaintiff's care, and harassment for poor performance were not addressed in either of Plaintiff's EEO Complaints. Compl. ¶¶ 17, 36, 38, 39; Exhibit A and B, 2005 and 2006 EEO Compls.[7] Thus, these allegations should be dismissed for failure to exhaust administrative remedies.

---

[7] Specifically, the claims that the Plaintiff did not exhaust include: that his supervisor falsely indicated that he had plead guilty to one investigation and had two investigations pending; that as a result of this negative reference, the Plaintiff was not selected for the position; that Defendant's refusal to remove Plaintiff's work restrictions effected his Air Force Reserve physician privileges as he had to report to the Air Force Reserve that an investigation against him was pending; that Defendant criticized his work, restricted his internet access, and conducted a medical review of inmates in his care; that the Defendant informed him that his Physician Comparability Allowance Payments would be halted due to his poor performance; that there would be ongoing investigations regarding his performance; and that he would have to operate under a daily plan; and that the Defendant asked him if he wanted to resign. Compl. ¶¶ 17, 32- 39.

CONCLUSION

Based upon the foregoing, Defendant respectfully requests that Plaintiff's complaint be dismissed with prejudice or in the alternative, summary judgment be granted in Defendant's favor.[8]

February 12, 2007                     Respectfully submitted,


                        _____/s/_____
                        JEFFREY A. TAYLOR, D.C. BAR # 498610
                        United States Attorney

                        _____/s/_____
                        RUDOLPH CONTRERAS, D.C. BAR # 434122
                        Assistant United States Attorney

                        _____/s/_____
                        Raymond A. Martinez,  Texas Bar # 13144015
                        Assistant United States Attorney
                        555 Fourth Street, N.W.
                        Washington, D.C. 20530
                        (202) 514-7153

.

---

[8] Due to lack of venue, the Court may choose to transfer the case to the Eastern District of Pennsylvania.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of February I caused the foregoing Motion to be served on

Plaintiff's counsel, via first class, postage pre-paid mail, addressed as follows:

Camilla C. Mckinney
McKinney & Associates, PLLC
1100 15th Street, NW
Suite 300
Washington, D.C. 2005-1720
202-517-9111
cmckinney@dcemploymentlawyer.com

_____/s/_____

Raymond A. Martinez,  Texas Bar # 13144015
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7153
RaymondMartinez2@usdoj.gov

16

**U.S. Department of Justice**

**Complaint of Discrimination**

*(See instructions on reverse)*

PRIVACY ACT STATEMENT: 1. AUTHORITY- The authority to collect this information is derived from 42 U.S.C. Section 2000e-16; 28 CFR Sections 1614.106 and 1614.108. 2. PURPOSE AND USE-This information will be used to document the issues and allegations of a complaint of discrimination based on race, color, sex (including sexual harassment), religion, national origin, age, disability (physical or mental), sexual orientation or reprisal.

The signed statement will serve as the record necessary to initiate an investigation and will become part of the complaint file during the investigation; hearing, if any; adjudication; and appeal, if one, to the Equal Employment Opportunity Commission. 3. EFFECTS OF NON-DISCLOSURE-Submission of this information is MANDATORY. Failure to furnish this information will result in the complaint being returned without action.

| | |
|---|---|
| 1. Complainant's Full Name **Gary Irving Reynolds** | 2. Your Telephone Number (including area code) Home **301.899.8560** |
| Street Address, RD Number, or Post Office Box Number **2402 Olson Street** | Work **215.521.4000 ext. 1093** |
| City, State and Zip Code **Temple Hills, MD 20748-3218** | |

| | |
|---|---|
| 3. Which Department of Justice Office Do You Believe Discriminated Against You? | 4. Current Work Address **700 Arch Street Philadelphia PA 19106** |
| **Federal Bureau of Prisons** | A. Name of Agency Where You Work **FDC Philadelphia** |
| B. Street Address of Office **320 First Street, N.W.   Room 700** | B. Street Address of Your Agency **700 Arch Street** |
| C. City, State and Zip Code **Washington, DC 20534** | C. City, State and Zip Code **Philadelphia, PA 19106** |
| | D. Title and Grade of Your Job **Medical Officer GS-15/10** |

5. Date on Which Most Recent Alleged Discrimination Took Place

Month **04**   Day **03**   Year **07**

6. Check Below Why You Believe You Were Discriminated Against?

- ☐ Race or Color (Give Race or Color) African-American
- ☐ Religion (Give Religion) . . . . . . . . . . . . . . . . . . . . . . . . . .
- ☐ Sex (Give Sex)   ☐ Male   ☐ Female
  - ☐ Sexual Harassment
- ☐ Age (Give age) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
- ☐ National Origin (Give National Origin) . . . . . . . . . . . . . . .
- ☐ Disability   ☐ Physical   ☐ Mental

- ☐ Sexual Orientation
- ☑ Reprisal
- ☐ Parental Status
- ☐ Class Complaint

7. Explain How You Believe You Were Discriminated Against *(treated differently from other employees or applicants)* Because of Your Race, Color, Sex (including sexual harassment), Religion, National Origin, Age, Disability (physical or mental), Sexual Orientation, Parental Status, or Reprisal. Do not include specific issues or incidents that you have not discussed with your EEO Counselor. *(You may continue your answer on another sheet of paper if you need more space.)*

On April 3, 2007, I was informed verbally and in writing by my supervisor, Odeida Dalmasi, M.D., and her supervisor, Tracey Brown, AW(P) that my medical privileges would be placed in abeyance so an investigation into how I managed Inmate Lisa Bell (an inmate who died under my care prior to Dr. Dalmasi's arrival) could be conducted.  This action is a pretext to either involuntarily terminate my employment or force my resignation because I filed a previous EEO action against both supervisors (P-2006-0320)

**RECEIVED**

8. What Corrective Action Do You Want Taken on Your Complaint?

1. Full unrestricted restoration of my clinical privileges
2. Transfer to permanent position in Central Office
3. Demotion and removal of Clinical Director Dalmasi
4. Demotion and removal of AW(P) Brown
5. Demotion and removal of Warden Troy Levi

MAY 29 2007

FEDERAL BUREAU OF PRISONS
DISCRIMINATION COMPLAINTS AND ETHICS

| | |
|---|---|
| 9. A) I have discussed my complaint with an Equal Employment Opportunity Counselor and/or other EEO Official: | B) Name of Counselor |
| DATE OF FIRST CONTACT WITH EEO OFFICE: Month **04** Day **12** Year **07** | DATE OF RECEIPT OF NOTICE OF FINAL INTERVIEW WITH EEO COUNSELOR: Month **05** Day **17** Year **07** | **Jim Kowalski** | ☐ I Have Not Contacted an EEO Counselor |

10. Date of This Complaint: Month **05**  Day **21**  Year **07**

11. Sign Your Name Here: *Gary Irving Reynolds, M.D.*

FORM DOJ-201A
MAR. 2001

**GOVERNMENT EXHIBIT**
8
CARDELL 800-782-8398

Affidavit of Gary Reynolds
Taken telephonically on May 25, 2005

My name is Patrick Whalen, and I am investigating your EEO complaint filed against officials at the Federal Detention Center in Philadelphia, Pennsylvania. The complaint number is P-2005-0138. I'm recording this interview, and a verbatim transcript will be prepared as an affidavit for your signature. When you receive the affidavit, please review it, make minor corrections if necessary, initial the changes, initial each page, sign the affidavit, and then return as directed. I'll be taking your testimony under oath. Do you swear or affirm that the testimony you are about to give is true and correct to the best of your knowledge?

A.    Yes, I affirm.

Q.    Could you please state and spell your name for the record?

A.    My name is Gary, G-A-R-Y, Irving, I-R-V-I-N-G, Reynolds, R-E-Y-N-O-L-D-S, M-D.

Q.    What is your current position and location?

A.    My current position is Medical Officer at the Federal Detention Center in Philadelphia.

Q.    What is your business telephone number?

A.    (215) 521-4093, direct line.

Q.    What is your grade and step?

A.    My grade is GS-15, Step 10.

Q.    Who is your immediate supervisor?

A.    David Massa, MD

Q.    Could you spell Dr. Massa's last name?



II
1

—05/3,/05            GR    Initials

POSITION DESCRIPTION

Medical Officer (General Practice)
(Medical Officer)
GS-602-15

## INTRODUCTION

The incumbent serves as the Medical Officer (General Practice) at
a Bureau of Prisons' (BOP) federal correctional facility.  The
Medical Officer provides professional health care services for
the federal prisoners confined at the facility.

## MAJOR DUTIES AND RESPONSIBILITIES

Provides specialized medical services to outpatients and provides
medical care to inpatients in institutions with an inpatient
mission.  Specific duties may involve all aspects of health care
delivery, and will work in concert with both institution staff
and consultant specialists in various clinical areas.  Performs
all duties in accordance with current accepted medical practices
and procedures.

Performs complete physical examinations.  Collects comprehensive
medical and social history to include a review of all body
systems. Performs physical assessment in correlation with
historical findings, records preliminary objective findings.

Examines and orders appropriate diagnostic testing and provides
necessary treatment and/or medications as required.  Refers
selected cases to consultant specialists when necessary. Refers
inmates requiring hospitalization to a community hospital and to
an appropriate admitting physician.  For institutions with
inpatient beds, incumbent will make rounds on inmates admitted to
his/her care, as described in applicable local procedures.
Additionally, the clinician may see inmate patients who are in
locked status, in their designated housing area or housed in
segregation units.

Conducts examinations of personnel as required for appointment.
Approves or disapproves examinations in such cases from a medical
viewpoint and in accordance with current established medical
standards for employees.

Administers or directs administration of both curative and
preventative inoculations.  Prescribes medications, treatments,
and fully utilizes health services for treatment, rehabilitative,
and diagnostic modalities.


GOVERNMENT
EXHIBIT
2

107

A.      Yes, I can.

Q.      We'll go off the record.

(Off record)

Q.      This is Patrick Whalen. We're now back on the record. Have you had an opportunity to review and pull up the information regarding the various cases?

A.      Yes.

Q.      Could you provide the chronological history then of the cases that were investigated and also what resulted from the investigation?

A.      The first case that I did was case no. 2002-03086, Philadelphia, and Gary Reynolds is listed as the subject, and the allegation by the inmate is physical abuse. This was a July 11, 2002, complaint by an inmate (*Inmate's name and register number have been removed to protect identity.*)

Q.      You can skip the inmate's information.

A.      Okay, and basically she just complained that during a physical examination by Dr. Reynolds that she felt that he used unnecessary force during the examination and disregarded the fact that she was in a lot of pain during a vaginal examination. I conducted the investigation and my findings were such that the investigation revealed subject used poor professional judgment when he chose to re-examine a female inmate who may have an ovarian cyst. He also allowed an intern to also examine the inmate, and this extra examination or second examination caused additional pain and discomfort for the inmate. According to Health Services staff, Dr. Kendig, subject, used "poor professional judgment," but it was not "professional misconduct," case closed, not sustained, and it was closed October 9, 2002.

Q.      What was the next case?

42
4





A.    The next case is 2004-02559, Philadelphia, subject is Dr. Gary Reynolds, and the allegation is abusive sexual contact. An Inmate (*Inmate's name has been removed to protect identity*) provided an affidavit and stated that when she went to the Health Services Office in May of 2004 for a follow up examination of right knee pain that Dr. Reynolds had touched her inappropriately in her chest area, and that he had also placed his fingers and had pulled her pants and her panties to a certain point where she felt that her private area could be viewed. I conducted the investigation and this was in June of 2004. The investigation did not sustain the allegations against Dr. Reynolds. The investigation revealed insufficient evidence that Dr. Reynolds engaged in abusive sexual contact with Inmate (*inmate's name removed*). Dr. Reynolds performed a routine 90-day medical examination, but failed to examine her knee, which is what she was supposed to be treated for. Dr. Reynolds stated that he did not examine the inmate's knee because a previous physician's plan of treatment had not been followed. Dr. Reynolds indicated he then gave Inmate (*inmate's name removed*) a medical exam as part of routine follow up. However, Dr. Reynolds admitted he missed the medical documentation in the file indicating Inmate (*inmate's name removed*) had been given a knee sleeve or support and was following another physician's plan. A review by Central Office Health Services Department determined it was Dr. Reynolds's professional decision as to whether he would examine Inmate (*inmate's name removed*) knee since that was why she was placed on the call out for Health Services. However, his actions did not constitute professional misconduct. Case closed, not sustained, August 16, 2004.

Q.    Then there are additional cases?

43

5







GOVERNMENT
EXHIBIT
4



A.    Yes, I do.

Q.    What were the results?

A.    The Office of Inspector General found that the allegations were unwarranted.

Q.    So therefore, the charges were not sustained?

A.    Right, there were no sustained charges.

Q.    No sustained charges, no disciplinary action?

A.    Right.

Q.    Ms. Brown, when did the investigation conclude?

A.    The investigation concluded on or about March 9. At the conclusion of the investigation and the receipt of documentation from OIG, I lifted those restrictions.

Q.    This is when you were Acting Warden?



A.    Absolutely, but I lifted it even as the AW over Medical, like I said, once the investigation was concluded, we received documentation saying that the allegations were unwarranted, and I went on and lifted the restriction.

Q.    What was the time frame that Dr. Reynolds was working under restrictions? When were they first in place?

A.    October 15, 2004 until March 9, 2005.

Q.    The restrictions initially were in place by whom?

A.    Ken Arnold, Associate Warden of Operations.

Q.    And those restrictions, were those imposed because of the allegations?

A.    Yes.

Q.    And at that time then it was referred for investigation?

A.    Absolutely.





5



GOVERNMENT
EXHIBIT
5

U.S. Department of Justice

# Complaint of Discrimination
*(See instructions on reverse)*

P-2005-0138

PRIVACY ACT STATEMENT: 1. AUTHORITY- The authority to collect this information is derived from 42 U.S.C. Section 2000e-16; 29 CFR Sections 1614.106 and 1614.108.
2. PURPOSE AND USE-This information will be used to document the issues and allegations of a complaint of discrimination based on race, color, sex (including sexual harassment), religion, national origin, age, disability (physical or mental), sexual orientation or reprisal.

The signed statement will serve as the record necessary to initiate an investigation and will become part of the complaint file during the investigation; hearing, if any; adjudication; and appeal, if non, to the Equal Employment Opportunity Commission. 3. EFFECTS OF NON-DISCLOSURE-Submission of this information is MANDATORY. Failure to furnish this information will result in the complaint being returned without action.

**1. Complainant's Full Name**

## Gary Irving Reynolds

Street Address, RD Number, or Post Office Box Number

## 2402 Olson Street

City, State and Zip Code

## Temple Hills, MD 20748

**2. Your Telephone Number (including area code)**
Home  **301.899.8560**

Work  **215.521.4093**

**3. Which Department of Justice Office Do You Believe Discriminated Against You?**

## Federal Bureau of ~~Prisons~~

**B. Street Address of Office**

## 320 First Street N.W.

**C. City, State and Zip Code**

## Washington, DC 20534

**4. Current Work Address**  **FDC Philadelphia**
**700 Arch Street**
**Philadelphia, PA 19106**

**A. Name of Agency Where You Work**
**Federal Detention Center, Philadelphi**

**B. Street Address of Your Agency**
**700 Arch Street**

**C. City, State and Zip Code**
**Philadelphia, PA 19106**

**D. Title and Grade of Your Job**
**Medical Officer GS-0602-15**

**5. Date on Which Most Recent Alleged Discrimination Took Place**

| Month | Day | Year |
|-------|-----|------|
| **10** | **15** | **2004** |

**6. Check Below Why You Believe You Were Discriminated Against?**

- [X] Race or Color (Give Race or Color)  **African American**
- [ ] Religion (Give Religion) _____
- [ ] Sex (Give Sex)  [ ] Male  [ ] Female
  - [ ] Sexual Harassment
- [ ] Age (Give age) _____
- [ ] National Origin (Give National Origin) _____
- [ ] Disability  [ ] Physical  [ ] Mental

- [ ] Sexual Orientation
- [X] Reprisal
- [ ] Parental Status
- [ ] Class Complaint

**7. Explain How You Believe You Were Discriminated Against** *(treated differently from other employees or applicants) Because of Your Race, Color, Sex (including sexual harassment), Religion, National Origin, Age, Disability (physical or mental), Sexual Orientation, Parental Status, or Reprisal. Do not include specific issues or incidents that you have not discussed with your EEO Counselor. (You may continue your answer on another sheet of paper if you need more space).*

Beginning 10/15/2004, I had involuntary restrictions applied to my practice of medicine at FDC Philadelphia. The restrictions were implemented in violation of existing Bureau of Prisons policy. The intent was reprisal related to a prior philosophical disagreement. The manner in which the restrictions were applied were unlawfully discriminatory. As a result, my professional reputation has been damaged, my integrity questioned and the possibility exists I may never be able to practice medicine without restrictions again.

**8. What Corrective Action Do You Want Taken on Your Complaint?**

## 1. Transfer from FDC Philadelphia to a Central Office position
## 2. Suspension to the maximum extent for all persons found liable
## 3. Additional actions as may be warranted

**9. A) I have discussed my complaint with an Equal Employment Opportunity Counselor and/or other EEO Official.**

DATE OF FIRST CONTACT WITH EEO OFFICE:
**2 | 14 | 05**

DATE OF RECEIPT OF NOTICE OF FINAL INTERVIEW WITH EEO COUNSELOR:
**3 | 11 | 05**

**B) Name of Counselor**
James Kowalski
FDC Philadelphia

[ ] I Have Not Contacted an EEO Counselor

**10. Date of This Complaint:**

| Month | Day | Year |
|-------|-----|------|
| **03** | **14** | **2005** |

**11. Sign Your Name Here:**
*Gary Reynolds*

GOVERNMENT EXHIBIT 6

2005-02

 

**U.S. Department of Justice**

**Complaint of Discrimination**
*(See instructions on reverse)*

PRIVACY ACT STATEMENT: 1. AUTHORITY- The authority to collect this information is derived from 42 U.S.C. Section 2000e-16; 29 CFR Sections 1614.106 and 1614.108. 2. PURPOSE AND USE-This information will be used to document the issues and allegations of a complaint of discrimination based on race, color, sex (including sexual harassment), religion, national origin, age, disability (physical or mental), sexual orientation or reprisal.

The signed statement will serve as the record necessary to initiate an investigation and will become part of the complaint file during the investigation; hearing, if any; adjudication; and appeal, if one, to the Equal Employment Opportunity Commission. 3. EFFECTS OF NON-DISCLOSURE-Submission of this information is MANDATORY. Failure to furnish this information will result in the complaint being returned without action.

**1. Complainant's Full Name**
Gary Irving Reynolds

Street Address, RD Number, or Post Office Box Number
2402 Olson Street

City, State and Zip Code
Temple Hills, MD 20748-3218

**2. Your Telephone Number (including area code)**
Home  301.899.8560
Work  215.521.4000 ext. 1093

**3. Which Department of Justice Office Do You Believe Discriminated Against You?**
Federal Bureau of Prisons

B. Street Address of Office
320 First Street, N.W.  Room 700

C. City, State and Zip Code
Washington, DC 20534

**4. Current Work Address**
700 Arch Street  Philadelphia, PA 19106

A. Name of Agency Where You Work
FDC Philadelphia

B. Street Address of Your Agency
700 Arch Street

C. City, State and Zip Code
Philadelphia, PA 19106

D. Title and Grade of Your Job
Medical Officer/GS-15

**5. Date on Which Most Recent Alleged Discrimination Took Place**

Month 09  Day 06  Year 06

**6. Check Below Why You Believe You Were Discriminated Against?**

☐ Race or Color (Give Race or Color) American-African
☐ Religion (Give Religion) _____
☐ Sex (Give Sex) ☑ Male ☐ Female
    ☐ Sexual Harassment
☐ Age (Give age) _____
☐ National Origin (Give National Origin) _____
☐ Disability ☐ Physical ☐ Mental

☐ Sexual Orientation
☑ Reprisal
☐ Parental Status
☐ Class Complaint

**7. Explain How You Believe You Were Discriminated Against** *(treated differently from other employees or applicants)* Because of Your Race, Color, Sex (including sexual harassment), Religion, National Origin, Age, Disability (physical or mental), Sexual Orientation, Parental Status, or Reprisal. Do not include specific issues or incidents that you have not discussed with your EEO Counselor. *(You may continue your answer on another sheet of paper if you need more space.)*

When I informed my immediate supervisor and her supervisor that I would be absent for an extended period of time due to scheduled annual leave, sick leave and military leave, these supervisors retaliated against me by classifying a significant portion of my absence as Absence Without Leave (AWOL), creating significant financial hardship and possibly resulting in disciplinary action. My supervisor's supervisor is involved in a previous EEO Complaint (P-2005-0138) filed March 14, 2005.

**8. What Corrective Action Do You Want Taken on Your Complaint?**

1. Restoration of all withheld wages
2. Voiding of any and all disciplinary actions associated with my complaint
3. Permanent removal of my immediate supervisor and her supervisor from any position involving staff supervision
4. Attorney's fees and expenses
5. Permanent transfer from FDC Philadelphia to a Central Office position.

**9. A) I have discussed my complaint with an Equal Employment Opportunity Counselor and/or other EEO Official.**

DATE OF FIRST CONTACT WITH EEO OFFICE:
09  06  06

DATE OF RECEIPT OF NOTICE OF FINAL INTERVIEW WITH EEO COUNSELOR:
09  26  06

**B) Name of Counselor**
Jim Kowalski

☐ I Have Not Contacted an EEO Counselor

**10. Date of This Complaint:**
Month 09  Day 27  Year 06

**11. Sign Your Name Here:**
*Gary Reynolds*

02 29 2006

GOVERNMENT EXHIBIT 7

UNITED STATES OF AMERICA
FOR THE DISTRICT OF COLUMBIA

Gary Reynolds )
        Plaintiff, )
         )
    v. )     Civil Action No. 07-0499 (RCL)
         )
Alberto Gonzales )
United States Attorney General. )
         )     October 1, 2007
         )
        Defendant. )
         )

## DECLARATION

I, Camille Duchaussée, the undersigned declarant for the Agency, do declare the following:

1.    I am currently employed by the Federal Bureau of Prisons at the United States Federal Detention Center in Philadelphia, Pennsylvania ("FDC Philadelphia") as an Employee Services Manager.

2.    As an Employee Services Manager, I have knowledge of the location of employment records for employees of the Bureau of Prisons who are assigned to FDC Philadelphia.

3.    Mr. Gary Irving Reynolds is an employee of the Bureau of Prisons and is assigned to FDC Philadelphia.

4.    The Official Personnel File (OPF), Performance File, and Payroll File for Mr. Reynolds are maintained in Grand Prairie, Texas at the Bureau of Prisons' Consolidate Employee Services Center.

5.    FDC Philadelphia has access rights to electronic personnel data for Mr. Reynolds.

6.    Leave records are maintained at FDC Philadelphia in accordance with Bureau of Prisons'

policy.

I declare under the pains and penalty of perjury that the foregoing is true and accurate

to the best of my knowledge.

_____                    _10/1/07_____
Camille Duchaussee                                                Date
Employee Services Manager